## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CIVIL ACTION NO. 2021-CV-60788/RUIZ-STRAUSS

| | |
|---|---|
| **J.P. MORGAN SECURITIES LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| -against- | ) |
| | ) |
| **GABRIEL R. GOMEZ,** | ) |
| | ) |
| **Defendant.** | ) |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
### FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff J.P. Morgan Securities LLC ("Plaintiff" or "JPMorgan") files this Memorandum of Law in Support of Its Application for Temporary Restraining Order and Temporary Injunction.[1]

### I.  Preliminary Statement

This dispute arises out of the departure of Defendant Gabriel R. Gomez ("Defendant") from JPMorgan on March 5, 2021, and the immediate commencement of his employment with Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("Wells Fargo"), a direct competitor of JPMorgan.

---

[1] Plaintiff is in the process of commencing before FINRA Dispute Resolution an arbitration proceeding seeking permanent injunctive relief against Defendant. Pending final determination in arbitration, Plaintiff is entitled to seek preliminary injunctive relief from this Court, even though the merits of the dispute between the parties ultimately will be resolved in arbitration. Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes requires a party seeking interim injunctive relief to obtain such relief from a court of competent jurisdiction. A copy of this Rule is annexed to the accompanying Declaration of Brian D. Buckstein as Exhibit A.

Defendant agreed to certain post-employment restrictions, which are set forth in two virtually identical Supervision, Arbitration, Confidentiality and Non-Solicitation Agreements (the "Non-Solicitation Agreement") that he entered into with JPMorgan, and JPMorgan's Code of Conduct.  See Declaration of Ian M. Beller ("Beller Dec."), Exhibits A, B and C.  Defendant agreed that if he left JPMorgan, he would be restricted from (1) soliciting the JPMorgan clients he serviced at JPMorgan or whose names became known to him at JPMorgan for a period of one year after his departure, and (2) using, disclosing, or transmitting JPMorgan's trade secrets and confidential and proprietary information.  Beller Dec. ¶¶ 18-26.

At the time Defendant resigned from JPMorgan, he serviced approximately 300 JPMorgan clients/households, the substantial majority of which were either existing JPMorgan clients at the time they were assigned to Defendant, or were developed by Defendant at JPMorgan. The clients whom JPMorgan had assigned to Defendant to service had a total of approximately $110 million in total assets under management.  Beller Dec. ¶ 14.

Upon his resignation from JPMorgan, Defendant has been aggressively soliciting JPMorgan clients to move their accounts from JPMorgan to him at Wells Fargo.  JPMorgan has learned that Defendant is soliciting JPMorgan clients via phone calls, including calls to clients on their personal cell phones, seeking to induce such clients to transfer their accounts from JPMorgan to him at Wells Fargo.  The clients have informed JPMorgan that Defendant's communications have been more than simply announcing his change of employment, and that he is actively seeking to induce them to do business with him at Wells Fargo.  Beller Dec. ¶¶ 3-10.

In addition, JPMorgan believes that Defendant took with him to Wells Fargo JPMorgan's confidential client information, including contact information such as cell phone numbers, which, on information and belief, are generally not publicly available, without which he

would have been unable to immediately commence calling and soliciting JPMorgan clients upon his departure.  Beller Dec. ¶ 12.

Such wrongdoing threatens JPMorgan with irreparable harm in a variety of ways, including present and future economic loss, loss of goodwill and business reputation and injury to office stability.  Accordingly, JPMorgan asks this Court to enter a Temporary Restraining Order and a Preliminary Injunction to restrain Defendant from continuing to violate his contractual obligations to JPMorgan until a panel of FINRA arbitrators rule on JPMorgan's request for permanent injunctive relief after an evidentiary hearing.

## II.   ARGUMENT

## A.   JPMORGAN IS ENTITLED TO SEEK TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF IN THIS COURT PENDING ARBITRATION

Even where a dispute (as here) is ultimately to be resolved in arbitration, JPMorgan is entitled to injunctive relief pending the outcome in arbitration.  Many courts have held that a court can grant injunctive relief in an arbitrable dispute pending arbitration, as long as the prerequisites for injunctive relief are satisfied.  See, e.g., Am. Express Fin. Advisors v. Makarawicz, 122 F.3d 936 (11th Cir. 1997); FHR TB, LLC v. TB Isle Resort, LP, 865 F. Supp. 2d 1172, 1205-06, 1214-15 (S.D. Fla. 2011) (Goodman, J.); Morgan Stanley DW, Inc. v. Planck, No. 07-80049, 2007 U.S. Dist. LEXIS 4057, at *2 (S.D. Fla. Jan. 19, 2007) (Ryskamp, J.) (granting temporary restraining order in dispute pending arbitration); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Silcox, No. 01-8800-CIV-HURLEY/LYNCH, 2001 U.S. Dist. LEXIS 17045, at *11-12 (S.D. Fla. Sept. 14, 2001) (Lynch, Jr., J.) (preliminary injunction was "intended to maintain the status quo until the conclusion of the arbitration proceedings"); Wine Not, Int'l v. 2atec, LLC, No. 8:06-CV-117-T-23TGW, 2006 U.S. Dist. LEXIS 46218, at *31-32 (M.D. Fla. May 18, 2006) ("[A] number of courts of appeal have considered this issue and, with one exception, have concluded

that a court may grant preliminary injunctive relief pending arbitration, provided the requirements

for such relief are met. . . .   This court also has applied [that] principle . . . ." (internal citations

omitted)).

**B.      JPMORGAN IS ENTITLED TO A TEMPORARY RESTRAINING
         ORDER AND A PRELIMINARY INJUNCTION**

During his employment with JPMorgan, Defendant expressly promised in his Non-

Solicitation Agreement not to solicit JPMorgan's clients, and not to misappropriate and/or use

JPMorgan's trade secrets and confidential and proprietary information.   Defendant, however, has

violated his obligations and duties to JPMorgan.   JPMorgan does not seek to bar Defendant from

working for a competitor, or competing for business from non-JPMorgan clients.   JPMorgan

merely seeks to protect its business from the improper solicitation of clients and the misuse of its

confidential information.

JPMorgan will sustain immediate and irreparable injury if a temporary restraining

order is not issued.   As a result of Defendant's violations of his obligations, JPMorgan has suffered

and will continue to suffer irreparable harm, and is entitled to a *status quo* temporary restraining

order and a preliminary injunction until a FINRA arbitration panel can determine JPMorgan's

claims for permanent injunctive relief.

**1.      Judicial Standard**

The requirements for obtaining injunctive relief in federal district courts in the

Eleventh Circuit are well established.   To obtain a preliminary injunction, the moving party must

prove: (1) a substantial likelihood that it will ultimately prevail on the merits, (2) a showing that it

will suffer irreparable injury unless the injunction issues, (3) proof that the threatened injury to it

outweighs whatever damage the proposed injunction may cause the opposing party, and (4) a

showing that the injunction, if issued, would not be adverse to the public interest.   See Forsyth

Cty. v. U.S. Army Corp. of Eng'rs, 633 F.3d 1032, 1039 (11th Cir. 2011); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001); Odebrecht Constr., Inc. v. Prasad, 876 F. Supp. 2d 1305, 1313 (S.D. Fla. 2012) (Moore, J.).

To demonstrate a substantial likelihood of success on the merits, JPMorgan is not required to show that it will succeed on all of its claims.  Instead, JPMorgan need merely "make a showing of likely or probable, but not certain, success at trial."  Wynn-Tobler v. Action Fin. Mortg. Corp., No. 06-21376-CIV-GRAHAM/O'SULLIVAN, 2007 U.S. Dist. LEXIS 103306, at *14 (S.D. Fla. Mar. 20, 2007) (O'Sullivan, J.) (citing Schiavo, 403 F.3d at 1232); accord Se. Mech. Servs., Inc. v. Brody, No. 8:08-CV-1151-T-30EAJ, 2008 U.S. Dist. LEXIS 123211, at *28-29 (M.D. Fla. July 25, 2008).  As is shown below, JPMorgan is likely to succeed at trial.

As established below, the requirements for injunctive relief are met here, and therefore, a temporary injunction should be issued restraining Defendant from soliciting JPMorgan's clients and from using JPMorgan's trade secrets and confidential and proprietary information.  Such an order is necessary in order to preserve the *status quo* pending arbitration before FINRA.

2.     **Courts Have Uniformly Recognized The Right Of A Securities Firm To Injunctive Relief Under Similar Circumstances**

Federal courts considering circumstances similar to those here have repeatedly held in favor of injunctive relief to prohibit the solicitation of the former employer's clients or to protect the misappropriation of confidential client information prior to an adjudication on the merits.  See, e.g., Makarawicz, 122 F.3d 936; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, 999 F.2d 211 (7th Cir. 1993); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726 (10th

Cir. 1986); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley</u>, 756 F.2d 1048 (4th Cir. 1985); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham</u>, 658 F. 2d 1098 (5th Cir. 1981).

In fact, JPMorgan has obtained injunctions from numerous courts, including this Court, enforcing the exact same or substantially similar contracts to the ones at issue here and under substantially similar circumstances. <u>See</u> Orders attached hereto as <u>Exhibit 1</u> through <u>Exhibit 24</u>.

Defendant expressly promised in the Non-Solicitation Agreement not to solicit JPMorgan's clients for a one year period after the termination of his employment and not to use or disclose JPMorgan's trade secrets and confidential and proprietary information. Defendant, however, has violated his obligations to JPMorgan. JPMorgan does not seek to bar Defendant from earning a living. JPMorgan is merely attempting to protect its business from the improper solicitation of its clients and the misuse of its confidential client information.

    **3.**    <u>**JPMorgan Satisfies All Requirements For Injunctive Relief**</u>

      **a.**    <u>**JPMorgan Is Likely to Succeed on the Merits**</u>

JPMorgan is entitled to injunctive relief to prevent Defendant from violating his obligations to JPMorgan not to solicit JPMorgan's clients and from using JPMorgan's trade secrets and confidential and proprietary information. Defendant expressly agreed not to solicit JPMorgan's clients for a period of one year following the termination of his employment. Further, Defendant had access to trade secrets and confidential and proprietary business and financial information concerning, *inter alia*, JPMorgan and its clients, which he expressly agreed not to disseminate or make use of, and to promptly return this information and materials after his affiliation with JPMorgan terminated.

6

Florida Statute § 542.335(1) provides that "enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited."  Pursuant to Florida Statute § 542.335(1)(b), a party seeking to enforce a restrictive covenant must prove the existence of a legitimate business interest justifying the covenant.  The term "legitimate business interest" is defined to include, but is not limited to: trade secrets, valuable confidential business or professional information that otherwise does not qualify as trade secrets, substantial relationships with specific prospective or existing customers, customer goodwill, and extraordinary or specialize training.  Florida Statute § 542.335(1)(b).  Moreover, the Florida Supreme Court has held that those are a non-exhaustive list of legitimate business interests, and the protection of a referral source also can be protected as a legitimate business interest within the meaning the statute.  White v. Mederi Caretenders Visiting Servs. Of Se. Fla., LLC, 226 So. 3d 774, 782-86 (2017).  Therefore, JPMorgan's relationships with its clients as well as its confidential information pertaining to such clients constitute protectable interests as a matter of Florida law.

Florida Statute § 542.335(1)(h) also provides that "[a] court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement.  A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract."

Florida Statute § 542.335(1)(j) also provides in pertinent part:

> *A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions.  The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.*  (Emphasis added.)

Therefore, Florida law is clear that reasonable restrictive covenants that protect a legitimate business interest are specifically enforceable, and a temporary restraining order and preliminary injunction are appropriate remedies.

(i)     **JPMorgan's Non-Solicitation Agreements Prohibiting the Solicitation of Clients Are Enforceable**

Defendant's Non-Solicitation Agreement, which prohibits Defendant from soliciting JPMorgan clients for one year after the termination of his employment, is enforceable. This Court has routinely enforced restrictive covenants (similar to those at issue here) prohibiting the solicitation of clients by a former employee. See, e.g., Winmark Corp. v. Brenoby Sports, Inc., 32 F. Supp. 3d 1206, 1225-26 (S.D. Fla. 2014) (Valle, J.) (granting injunctive relief and upholding a restrictive covenant); United Subcontractors, Inc. v. Godwin, No. 11-81329-Civ-Hurley/Hopkins, 2012 U.S. Dist. LEXIS 67061, at *28 (S.D. Fla. Feb. 3, 2012) (Hopkins, J.) (same); Estetique Inc. USA v. Xpamed LLC, No. 0:11-CIV-61740-COHN/SELTZER, 2011 U.S. Dist. LEXIS 104427, at *21 (S.D. Fla. Sept. 14, 2011) (Cohn, J.) (granting injunctive relief and noting that "[p]ursuant to Florida's statute, 'legitimate business interests' include: trade secrets, valuable confidential business information, substantial relationships with specific prospective or existing customers, customer goodwill, and extraordinary or specialized training."); Cont'l Group, Inc. v. Kw Prop. Mgmt., LLC, 622 F. Supp. 2d 1357, 1379 (S.D. Fla. 2009) (Cohn, J.) (upholding the restrictive covenant and restraining the defendants from soliciting the plaintiff's clients or employees for two years); Pitney Bowes, Inc. v. Acevedo, No. 08-21808-CIV-JORDAN, 2008 U.S. Dist. LEXIS 61194, at *6 (S.D. Fla. July 28, 2008) (Jordan, J.) (granting preliminary injunction preventing defendant from-soliciting clients); Planck, 2007 U.S. Dist. LEXIS 4057, at *2 (granting temporary restraining order preventing defendant from-soliciting clients); Milner Voice & Data, Inc. v. Tassy, 377 F. Supp. 2d 1209, 1221 (S.D. Fla. 2005) (Moore, J.) (granting

8

injunctive relief and upholding a two-year restrictive covenant because the plaintiff had a legitimate interest in protecting its business and its customers); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty, 808 F. Supp. 1555 (S.D. Fla. 1992).  See also USI Ins. Servs. of Fla. Inc. v. Pettineo, 987 So. 2d 763, 765 (Fla. Dist. Ct. App. 4th Dist. 2008); Magner Int'l Corp. v. Brett, 960 So. 2d 841, 845 (Fla. Dist. Ct. App. 4th Dist. 2007).

    Defendant's Non-Solicitation Agreement with JPMorgan also is enforceable under New York law, which is designated as the choice of law.  In BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999), the New York Court of Appeals (New York's highest court) held that a restrictive covenant prohibiting the solicitation of clients by a former employee is enforceable, to the extent that it protects a legitimate business interest of the former employer. Since BDO Seidman, federal and state courts in New York routinely enforce restrictive covenants (similar to those at issue here) prohibiting the solicitation of clients by a former employee.  See, e.g., Kelly v. Evolution Mkts., Inc., 626 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (granting a motion for preliminary injunction enjoining the defendant from soliciting its former employer's confidential and trade secret information); Ingenuit, LTD. v. Hariff, 822 N.Y.S. 2d 301 (2d Dep't 2006) (injunction against soliciting clients and using proprietary information); OTG Mgt., LLC v. Konstantinidis, 40 Misc. 3d 617, 622 (Sup. Ct. N.Y. Cty. 2013) (granting motion for preliminary injunction enjoining solicitation of former employer's employees and customers); Spinal Dimensions, Inc. v. Chepenuk, 16 Misc. 3d 1121(A), 1121A (Sup. Ct. Albany Cty. 2007) (granting motion for preliminary injunction "bar[ring] Defendant from contacting, soliciting or otherwise interfering with existing business relationships between SDI and its clients/customers, employees, independent contractors or other individuals with whom it does business").

(ii)     **JPMorgan's Agreements Prohibiting the Use of JPMorgan's Confidential Information Are Enforceable**

Defendant's Non-Solicitation Agreement (as well as the JPMorgan Code of Conduct) contains the express promise not to use JPMorgan's trade secrets and confidential and proprietary information and to promptly return such information after Defendant's employment with JPMorgan is terminated.  Beller Dec. Exhibits A, B and C.  Federal courts in Florida have granted injunctive relief specifically enforcing similar covenants protecting a company's confidential information.  See, e.g., All Leisure Holidays Ltd. v. Novello, No. 12-62328-CIV-ROSENBAUM, 2012 U.S. Dist. LEXIS 168774, at *11 (S.D. Fla. Nov. 27, 2012) (Rosenbaum, J.) (granting temporary restraining order restraining defendants from, inter alia, using plaintiff's client list); Ryan, LLC v. Evans, No. 12-cv-289-T-30, 2012 U.S. Dist. LEXIS 59693, at *29 (M.D. Fla. Mar. 20, 2012) (granting preliminary injunction enjoining former employees from using plaintiff's confidential and proprietary information); Marine Turbo Eng'g, Ltd. v. Turbocharger Servs. Worldwide, LLC, No. 11-60621-CIV-MARTINEZ-MCALILEY, 2011 U.S. Dist. LEXIS 147583, at *3 (S.D. Fla. Dec. 22, 2011) (Martinez, J.) (granting preliminary injunctive enjoining, inter alia, disclosing plaintiff's confidential information); Planck, 2007 U.S. Dist. LEXIS 4057, at *2 (granting temporary restraining order preventing defendant from-using Morgan Stanley's client information, including clients' names, addresses and financial information).[2]

In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dunn, the court, noting that it "has the authority to issue injunctive relief despite the parties' agreements to arbitrate their

---

[2] JPMorgan's confidentiality provisions contained in Defendant's Non-Solicitation Agreement and the Code of Conduct also are enforceable under New York law, which is designated as the choice of law.  See Hariff, 33 A.D. 3d 589 (injunction against using proprietary information improperly taken from Plaintiff); Pace Secs., Inc. v. Pollak Jr., 157 A.D.2d 557 (N.Y. App. Div. 1990) (affirming injunction against utilizing customer lists of plaintiff financial firm).

disputes," issued injunctive relief to enforce the non-solicitation and non-disclosure covenants signed by a financial advisor.  191 F. Supp. 2d 1346, 1350 (M.D. Fla. 2002).  The financial advisors in <u>Dunn</u> used confidential client information "to solicit Plaintiff's customers by mail, telephone, and personal meetings" in "direct violation of their agreements with Plaintiff not to solicit Plaintiff's customers."  <u>Id</u>. at 1351.  Accordingly, not only was plaintiff likely to succeed on the merits, but it was also "presumed to suffer irreparable harm by Defendant['s] . . . use of Plaintiff's customer lists and solicitation of Plaintiff's customers."  <u>Id</u>. at 1354.  While the Plaintiff would suffer irreparable harm without injunctive relief, the defendant would simply be held to the terms of valid agreements.  <u>Id</u>.

It is axiomatic then that JPMorgan has a legitimate interest in protecting the relationships it has forged with its clients and the confidential client information entrusted to JPMorgan as a result of these relationships.  Indeed, JPMorgan's clients are its most important assets.  In sum, JPMorgan has made a sufficient showing to establish a likelihood of success.  Accordingly, Defendant should not be allowed to continue to violate his obligations by soliciting JPMorgan's clients and using JPMorgan confidential client information.

### b.    In the Absence of an Injunction, <u>JPMorgan Will Suffer Irreparable Harm</u>

JPMorgan will be irreparably harmed by Defendant's continued improper solicitation of JPMorgan's clients.  Florida Statute § 542.335(1)(j) provides that the "violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant."

This Court repeatedly has determined that the potential loss of clients would result in irreparable harm, entitling the plaintiff to injunctive relief.  <u>BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC</u>, 425 F.3d 964, 970 (11th Cir. 2005) ("[T]he loss of

customers and goodwill is an irreparable injury." (internal citation and quotation marks omitted)); Ferraro v. Assoc. Materials, Inc., 923 F.2d 1441, 1449 (11th Cir. 1991) (same); Hermosilla v. Coca-Cola Co., 717 F. Supp. 2d 1297, 1305 (S.D. Fla. 2010) (Moore, J.) (same); ABC Charters, Inc. v. Bronson, 591 F. Supp. 2d 1272, 1308-09 (S.D. Fla. 2008) (Gold, J.) (the loss of business and goodwill is irreparable harm); All Leisure Holidays Ltd., 2012 U.S. Dist. LEXIS 168774, at *14 ("[T]he loss of customers and goodwill is an 'irreparable' injury.'"). In Hagerty, which was affirmed by the Eleventh Circuit without opinion, the district court found that the "use of specific trade secrets, customer lists or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined." Hagerty, 808 F. Supp. at 1558.

Similarly, this Court repeatedly has determined that a defendant's continued use of misappropriated confidential information would result in irreparable harm, entitling the plaintiff to injunctive relief. Sensormatic Elecs. Corp. v. Tag Co. US, 632 F. Supp. 2d 1147, 1191 (S.D. Fla. 2008) (Hurley, J.) ("Injunctive relief is appropriate on the fiduciary duty claim in order to prevent Mr. Gadonniex from further disclosing Sensormatic's confidential proprietary information, thereby causing Sensormatic further irreparable harm."); PSC, S.A. v. PriceSmart, Inc., No. 07-21383-CIV-COOKE/BROWN, 2007 U.S. Dist. LEXIS 69252, at *18 (S.D. Fla. Sept. 19, 2007) (Brown, J).

Here, it is extremely difficult to quantify the future economic losses that JPMorgan will suffer from the loss of its clients and their accounts to a competitor. How many of these clients' accounts would have grown in the future or by how much JPMorgan cannot now calculate. In addition, JPMorgan cannot quantify the loss of client confidence that will occur absent an injunction.

Another aspect of irreparable harm is that office morale and stability will be jeopardized if Defendant is permitted to violate his Non-Solicitation Agreement with JPMorgan and the Code of Conduct with impunity and to dissipate JPMorgan's goodwill.

For all the reasons set forth above, the injury JPMorgan faces is irreparable and cannot later be compensated with money damages.

### c.   The Threatened Injury to JPMorgan Outweighs The Potential Harm to Defendant

Florida Statute § 542.335(1)(g)(1) provides that in determining the enforceability of a restrictive covenant, a court "[s]hall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought."  Therefore, this Court is precluded by statute from considering any potential harm to Defendant as a result of enforcing the restrictive covenants he agreed to.

Even if the Court were to consider the potential harm to Defendant, the risk of irreparable harm to JPMorgan easily outweighs any injury to Defendant.  On the one hand, an injunction would safeguard JPMorgan's goodwill and relationships with its clients, business reputation, the integrity and viability of its Florida offices, and its common law and contractual rights.  An injunction would also serve to discourage JPMorgan's current employees from breaching their contractual obligations, the Code of Conduct, their fiduciary duties and their duties of loyalty, in addition to deterring JPMorgan's competitors from inducing JPMorgan's employees to do so.

By contrast, Defendant has deliberately breached his commitments to JPMorgan by soliciting JPMorgan clients to join him at Wells Fargo.  Therefore, Defendant should not be rewarded for such conduct.  See 7-Eleven, Inc. v. Kapoor Bros., Inc., 977 F. Supp. 2d 1211, 1227 (M.D. Fla. 2013) ("[W]eighing Defendants' essentially self-inflicted injuries against the

immeasurable losses to Plaintiff's goodwill, the Court finds that the balance of harms weighs decisively in favor of granting the requested injunctive relief." (internal citation and quotation marks omitted)); <u>Dunkin' Donuts Franchised Rests. LLC v. Kev Enters.</u>, 634 F. Supp. 2d 1324, 1336 (M.D. Fla. 2009) ("While the Court recognizes that Defendants will sustain financial losses if a preliminary injunction issues, that harm is the result of Defendants' failure to comply with the requirements of the Franchise Agreements.").

Preventing Defendant from soliciting JPMorgan clients and using JPMorgan's trade secrets and confidential and proprietary information subjects him to no undue hardship. The loss to JPMorgan, then, greatly outweighs any potential harm to Defendant.

Defendant will not be precluded from engaging in his chosen profession or from working at Wells Fargo. The injunction sought merely precludes Defendant from breaching his contractual obligations to JPMorgan. Therefore, the balancing of the equities lies in JPMorgan's favor, and an injunction should be granted.

### d.    <u>An Injunction Will Not Harm the Public Interest</u>

Florida Statute § 542.335(1)(i) provides:

> No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.

The only public interest at issue in this case is that of enforcing reasonable contracts and protecting a business's investment in its development. Accordingly, the public interest is served by issuance of the preliminary injunction that JPMorgan seeks. <u>See Ryan, LLC</u>, 2012 U.S. Dist. LEXIS 59693, at *32 (noting that enforcement of valid contracts and fair competition in the

marketplace both serve the public interest); <u>Se. Mech. Servs., Inc.</u>, 2008 U.S. Dist. LEXIS 123211, at *46-47 ("A preliminary injunction would not disserve the public interest; a preliminary injunction would serve the public interest by protecting business from misappropriation of confidential information and resources." (citation omitted)); <u>Dunn</u>, 191 F. Supp. 2d at 1354 (holding that injunctive relief is not adverse to the public interest where it merely prohibits defendants from using or disclosing plaintiff's confidential information or soliciting plaintiff's current customers).

The rationale behind these cases and countless others is that a former employee should not be able to injure his former employer and profit from his wrongdoing.  The analysis and result should be the same here.

### III.    Conclusion and Prayer

JPMorgan asks that the Court enter a Temporary Restraining Order and a Preliminary Injunction requiring Defendant to adhere to his obligations to JPMorgan pursuant to his Non-Solicitation Agreement and the JPMorgan Code of Conduct, and prohibit him from soliciting JPMorgan's clients, and using or disclosing JPMorgan's trade secrets and confidential and proprietary information, until a panel of FINRA arbitrators rule on JPMorgan's request for permanent injunctive relief after an evidentiary hearing.

Dated:  April 12, 2021

Respectfully submitted,

GONZALEZ, SHENKMAN & BUCKSTEIN, P.L.

/s/ *Brian Buckstein*
   Brian D. Buckstein
110 Professional Way
Wellington, Florida 33414
**Telephone:** (561) 227-1575
**Facsimile:** (561) 227-1574
bbuckstein@gsblawfirm.com

Attorneys for Plaintiff
J.P. Morgan Securities LLC